IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

DEANNA LYNN MUTCHLER,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C13-0009

REPORT AND RECOMMENDATION

## TABLE OF CONTENTS

I.   *INTRODUCTION* ................................................. 2

II.  *PROCEDURAL BACKGROUND* ................................. 2

III. *PRINCIPLES OF REVIEW* ..................................... 3

IV.  *FACTS* ......................................................... 5
     A.   *Mutchler's Education and Employment Background* ........... 5
     B.   *Administrative Hearing Testimony* .......................... 6
          1.   *Mutchler's Testimony* ................................ 6
          2.   *Vocational Expert's Testimony* ...................... 6
     C.   *Mutchler's Medical History* ............................... 8

V.   *CONCLUSIONS OF LAW* ...................................... 13
     A.   *ALJ's Disability Determination* ........................... 13
     B.   *Objections Raised By Claimant* ........................... 15
          1.   *RFC Assessment* .................................... 15
          2.   *Hypothetical Question* ............................. 22

VI.  *CONCLUSION* ............................................... 23

VII. *RECOMMENDATION* .......................................... 23

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Deanna Lynn Mutchler on February 20, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Mutchler asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits.

## II. PROCEDURAL BACKGROUND

On March 3, 2010, Mutchler applied for both disability insurance benefits and SSI benefits. In her applications, Mutchler alleged an inability to work since December 31, 2005 due to emphysema, COPD, colon cancer, anemia, and GERD.[1] Mutchler's applications were denied on June 16, 2010. On August 23, 2010, her applications were denied on reconsideration. On November 8, 2011, Mutchler appeared via video conference with her attorney before Administrative Law Judge ("ALJ") Julie K. Bruntz for an administrative hearing. Mutchler and vocational expert Elizabeth M. Albrecht testified at the hearing. In a decision dated January 17, 2012, the ALJ denied Mutchler's claims. The ALJ determined that Mutchler was not disabled and not entitled to disability insurance benefits or SSI benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. Mutchler appealed the ALJ's decision. On January 23, 2013, the Appeals Council denied Mutchler's request for

---

[1] At the administrative hearing, Mutchler amended her disability onset date to February 1, 2009. *See* Administrative Record at 51. In her decision, Administrative Law Judge Julie K. Bruntz noted that "[i]n both applications, [Mutchler], through her attorney, amended her alleged disability onset date to February 1, 2009. *Id.* at 13; *see also* Mutchler's Brief (docket number 9) at 1 ("[A]t the hearing [Mutchler] amended her onset date to February 1, 2009."). Accordingly, the Court will proceed with a disability onset date of February 1, 2009 for Mutchler.

2

review. Consequently, the ALJ's January 17, 2012 decision was adopted as the Commissioner's final decision.

On February 20, 2013, Mutchler filed this action for judicial review. The Commissioner filed an Answer on May 2, 2013. On June 3, 2013, Mutchler filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing other work that exists in significant numbers in the national economy. On August 1, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On August 8, 2013, Mutchler filed a reply brief.[2] On October 19, 2013, Chief Judge Linda R. Reade referred this matter to a magistrate judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the

---

[2] On August 15, 2013, the Commissioner filed a Motion to Strike or, in the alternative, Motion for Leave to File a Sur-Reply. *See* docket number 13. The Commissioner sought to strike the final paragraph on page three of Mutchler's reply brief and continuing through the end of her reply brief because Mutchler raised a new claim of error that she did not address in her initial Brief (docket number 9). *Id.* Mutchler did not respond to the Commissioner's motion to strike, and the Court granted the Commissioner's motion. *See* docket number 14. Accordingly, because the final paragraph on page three of Mutchler's reply brief and continuing through the end of the brief is stricken, the Court will disregard that portion of her reply brief.

Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as " 'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.' " *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court " 'will not disturb the denial

of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Mutchler's Education and Employment Background

Mutchler was born in 1960. She is a high school graduate. At the administrative hearing, Mutchler testified that she is able to read and write, but has difficulties with math.

The record contains a detailed earnings report for Mutchler. The report covers the time period of 1974 to 2010. Prior to 1977, Mutchler had minimal earnings (less than $1,400). From 1977 to 1984, she earned between $3,496.78 (1980) and $8,413.30 (1979). She had no earnings from 1985 to 1987. From 1988 to 2004, she earned between $2,895.10 (2003) and $28,942.65 (2001). Mutchler had no earnings from 2005 to 2006. She earned less than $1,000 in 2007 and 2008. In 2009, she earned $4,064.54. She has no earnings since 2010.

## B. Administrative Hearing Testimony

### 1. Mutchler's Testimony

At the administrative hearing, Mutchler's attorney asked Mutchler why she believes she is unable to work at a full-time job. Mutchler replied that she could not work at a full-time job because she has trouble lifting "very much" and could not stand for extended periods of time. She also stated that she has difficulty using and gripping with her right hand. Mutchler also testified that she does not like to spend time in public places because "[p]eople bother me."

The ALJ also questioned Mutchler. The ALJ inquired about Mutchler's typical day:

> Q: Okay. Okay. So can you tell me how you spend your days?
> A: Well, when I get up, I just get myself a cup of coffee. I watch a lot of TV. I do a little housework and make the bed. I do a couple puzzles. But, mostly, I watch a lot of TV. . . .
> Q: And, then are you able to cook meals?
> A: Sometimes.
> Q: All right. Do you do laundry?
> A: I believe, yes, I do laundry.

(Administrative Record at 53.)

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Elizabeth M. Albrecht with a hypothetical for an individual who is able to:

> do light work as that term is defined by the regulations. Furthermore, she could frequently climb ramps and stairs, ladders, ropes and scaffolds; balance, stoop, kneel, crouch and occasionally crawl. She could do frequent handling and fingering with the right hand, which is her dominant hand. She would need to avoid concentrated exposure to extreme cold, humidity, fumes, odors, gases, poor ventilation and dust.

> Additionally, this individual is limited to simple, routine tasks.
> She could have short-lived superficial contact with the public,
> co-workers or supervisors.

(Administrative Record at 56.) The vocational expert testified that under such limitations, Mutchler could not perform her past relevant work, but could perform the following jobs: (1) marker (2,500 positions in Iowa and 213,000 positions in the nation), (2) assembler (4,200 positions in Iowa and 227,000 positions in the nation), and (3) laundry folder (800 positions in Iowa and 86,000 positions in the nation). Next, the ALJ and the vocational expert had the following exchange:

> Q: If I changed the limitation that she could do only occasional handling and fingering, would that change your answer?
>
> A: She could not do the assembler. I believe it would eliminate all the jobs, as they do require frequent [handling and fingering].
>
> Q: Would there be any jobs that you could do with occasional handling and fingering at the light level?
>
> A: There are some.

(Administrative Record at 58.) Specifically, the vocational expert testified that Mutchler could perform the following work: (1) counter clerk (1,100 positions in Iowa and 110,000 positions in the nation), (2) usher (700 positions in Iowa and 85,000 positions in the nation), and (3) information clerk (900 positions in Iowa and 85,000 positions in the nation). Lastly, the ALJ asked "[i]f you would add to any hypothetical the individual would miss three or more days a month, that would preclude . . . competitive employment."[3] The vocational expert answered that such a limitation would preclude competitive employment.

---

[3] Administrative Record at 59.

## C. Mutchler's Medical History

On March 19, 2008, Mutchler was referred by Disability Determination Services ("DDS") to David Engelstad, M.A., and Joan Jacob, M.A., for a psychodiagnostic mental status examination. In reviewing Mutchler's mental health history, Engelstad and Jacob found that:

> [Mutchler] did not have mental health concerns until 2000, when her father's health began to fail. She stated that she had low mood, difficulty concentrating, thoughts of death and dreams of people dying. She was not eating well, lost 20 pounds and had disturbed sleep. She did not think she had suicidal thinking more than typical. Her mood was consistently low and she did not identify discrete episodes of significant low mood. In 2003, she obtained antidepressants from the Free Clinic. She used Lexapro for one year without relief. She then began using Effexor which she now uses and she reports this has been fairly effective. She still has some dreams but sleeps much better.

(Administrative Record at 279.) Engelstad and Jacob also noted that in 2004, Mutchler had 3 months residential, and 3 months outpatient treatment in an alcohol treatment program. She reported only having an "occasional" beer at the time of her examination. Mutchler described her typical daily activities as follows:

> [She] usually gets up at approximately 5:30 in the morning. She takes a shower and attends to personal hygiene. . . . She does household chores during the day, dusting 'a lot', vacuuming, doing laundry and feeding the plants. She described herself as a 'neat freak', being bothered if things are out of place. She has a small lunch after which she goes for a long walk, sometimes up to 3+ hours, as she goes to different stores or puts in applications for work at various places. . . . She will make an evening meal for herself. She may do crossword puzzles or play solitaire. In the evening her boyfriend comes over[.] . . . [She] usually goes to bed at 10:00 p.m. but sometimes stays up later so she can sleep better.

(Administrative Record at 279.) Upon examination, Engelstad and Jacob diagnosed Mutchler with ADHD, depressive disorder, dyssomia, and alcohol dependence in sustained partial remission. Engelstad and Jacob concluded that:

> From a mental health standpoint, [Mutchler] does not appear significantly impaired. She does have some depression and her attention/impulsivity may impact her general functioning. However, she appears to have the mental skills to remember and understand instructions, procedures and locations. She may be mildly impaired in carrying out instructions, maintaining attention, concentration and pace. She appears capable of interacting appropriately with supervisors, co-workers and the public. She appears to have marginal judgment and would likely function better in a more routine work environment.

(Administrative Record at 281.)

On April 8, 2008, Mutchler was referred by DDS to Dr. Audrey R. Shaeffer, D.O., for a consultative examination. At the examination, Mutchler complained of right wrist pain from an injury sustained in 2001. She stated that her wrist pain "averages an 8 ranging from 0 to 10 and is increased with lifting and carrying and decreased with rest."[4] Dr. Shaeffer also noted that in February 2008, Mutchler was diagnosed with emphysema. Additionally, Mutchler reported pain and weakness in her legs with standing for long periods of time. Upon examination, Dr. Shaeffer found that Mutchler had: (1) no restrictions in sitting; and (2) occasional restrictions in the ability to stand, walk, stoop, bend, crawl, kneel, and climb stairs. Lastly, Dr. Shaeffer opined that Mutchler should be restricted from working around fumes and dust due to her emphysema.

On May 12, 2010, DDS referred Mutchler to Dr. Michael C. March, Ph.D., for a mental status evaluation. Mutchler reported struggling with depression for the past 15 years. She indicated suffering from feelings of worthlessness "due to being unable to

---

[4] Administrative Record at 283.

provide for herself or her loved ones as she is not working."[5]  Mutchler also reported

having poor attention and concentration and "significant" anxiety.  According to Mutchler,

she spends the majority of her day watching television and doing puzzles because she

"cannot clean and cannot cook for herself and others."[6]  Upon examination, Dr. March

diagnosed Mutchler with depressive disorder, anxiety disorder, and ADHD.  Dr. March

concluded that:

> With regard to work-related activities, I would anticipate that
> [Mutchler] would have mild to perhaps moderate problems
> with remembering and understanding instructions, procedures,
> and locations.    Given her difficulties with sustaining
> concentration and her current affective distress, I would
> anticipate moderate problems with sustaining attention,
> concentration, and pace.  Her anxiety could lead to occasional
> difficulties with interpersonal interactions in terms of limited
> frustration tolerance.  She denied any history of noteworthy
> interpersonal problems in the work place whether with
> supervisors, coworkers, or the public.  Her judgment is fair,
> and she may have mild-to-moderate problems coping with
> change in the work place.

(Administrative Record at 371.)

On May 25, 2010, Mutchler was referred by DDS to Dr. George T. Kappos, M.D.,

for a consultative examination.  In reviewing her medical history, Mutchler reported a

history of emphysema and COPD.  According to Mutchler, her symptoms include

shortness of breath and excessive coughing.  She stated that "[t]he symptoms are worsened

by walking, vacuuming and taking baths and improved by working puzzles, beading,

sleeping and sitting still."[7]  As for her COPD, Mutchler stated that her "symptoms are

---

[5] *Id.* at 367.

[6] *Id.* at 368.

[7] Administrative Record at 391.

worsened by everything that she does and are improved by sleeping and sitting still."[8]

Dr. Kappos noted that Mutchler "does complain of a lot of arthritis symptoms, even though this was not listed as one of her reasons for disability."[9] Upon examination, Dr. Kappos found that Mutchler has no functional limitations except for occasional difficulties with walking due to shortness of breath.

On June 2, 2010, Dr. Jennifer Wigton, Ph.D., reviewed Mutchler's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Mutchler. On the Psychiatric Review Technique, Dr. Wigton diagnosed Mutchler with ADHD, depressive disorder, anxiety disorder, and alcohol dependence. Dr. Wigton determined that Mutchler had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Wigton determined that Mutchler was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. Dr. Wigton concluded that:

> Although [Mutchler] complains about concentration and memory, she is able to do puzzles, bead work, computer training, and her mother does not indicate any concentration or memory difficulties. If [Mutchler] refrains from excessive alcohol use, she may struggle with concentration and pace according to the variability of her mood, but is capable of performing simple, repetitive tasks in a routine environment

---

[8] *Id.*

[9] *Id.* at 392.

with limited stressful interpersonal interactions when motivated
to do so.

(Administrative Record at 375.)

On June 15, 2010, Dr. Matthew Byrnes, D.O., reviewed Mutchler's medical records and provided DDS with a physical RFC assessment for Mutchler. Dr. Byrnes determined that Mutchler could: (1) occasionally lift and/or carry 50 pounds, (2) frequently lift and/or carry 25 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Byrnes further determined that Mutchler could frequently climb ramps/stairs, balance, stoop, kneel, and crouch, but only occasionally crawl. Dr. Byrnes found that Mutchler was limited in her ability to handle and finger. Specifically, Dr. Byrnes found that in her right upper extremity, Mutchler's "gross [and] fine manipulation [was] limited to frequent due to finger contractures[.]"[10] Dr. Byrnes also opined that Mutchler should avoid concentrated exposure to extreme cold and fumes, odors, dusts, gases, and poor ventilation. Dr. Byrnes found no visual or communicative limitations. Dr. Byrnes concluded that:

> The credibility of [Mutchler's] allegations is partially eroded as they are not consistent with the [medical evidence of record]. The self-reported limitations were not substantiated by the medical records.

(Administrative Record at 407.)

On August 19, 2010, Dr. Chystalla Daly, D.O. reviewed Mutchler's medical records and provided DDS with a physical RFC assessment for Mutchler. Dr. Daly determined that Mutchler could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for

---

[10] Administrative Record at 403.

a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Daly opined that Mutchler was limited to "occasional" use of her right upper extremity for handling and fingering. Dr. Daly also opined that Mutchler should avoid concentrated exposure to humidity and fumes, odors, dusts, gases, and poor ventilation. Dr. Daly found no postural, visual, or communicative limitations.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Mutchler is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Mutchler had not engaged in substantial gainful activity since February 1, 2009. At the second step, the ALJ

concluded from the medical evidence that Mutchler had the following severe impairments: COPD, emphysema, contracture of the second and third digits of the right hand, anemia, GERD in remission, colon cancer in remission, anxiety disorder, depressive disorder, osteoarthritis, and ADHD. At the third step, the ALJ found that Mutchler did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Mutchler's RFC as follows:

> [Mutchler] has the residual functional capacity to perform light work[.] . . . [Mutchler] is able to frequently climb ramps, stairs, ladders, ropes, and scaffolds. She can frequently balance, stoop, kneel, crouch, and occasionally crawl. She can do occasional handling and fingering with her right hand, which is her dominant hand. [She] should avoid concentrated exposure to extreme cold, humidity, fumes, gases, poor ventilation, and dust. [Mutchler] is limited to simple, routine tasks, and can have short-lived, superficial contact with coworkers, supervisors, and the public.

(Administrative Record at 17.) Also at the fourth step, the ALJ determined that Mutchler was unable to perform any of her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Mutchler could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Mutchler was not disabled.

### B. Objections Raised By Claimant

Mutchler argues that the ALJ erred in two respects. First, Mutchler argues that the ALJ's RFC assessment is flawed and not supported by substantial evidence. Second, Mutchler argues that the ALJ's hypothetical question to the vocational expert was flawed because it did not properly account for her limitations.

### 1. RFC Assessment

Mutchler argues that the ALJ's RFC assessment is flawed and not supported by substantial evidence. Specifically, Mutchler argues that the ALJ failed to properly evaluate

the opinions of Dr. Kappos and Dr. Shaeffer, both consultative examining doctors. Mutchler asserts that both Dr. Kappos' and Dr. Shaeffer's opinions regarding her RFC limit her to only "sedentary" work.[11] Mutchler further asserts that the ALJ incorrectly limited her to "light" work in the ALJ's RFC assessment.[12] Mutchler maintains that Dr. Kappos' and Dr. Shaeffer's opinions regarding her RFC are significant because, if the opinions of both doctors were properly weighed and evaluated, *and* the ALJ followed those opinions finding Mutchler limited to only "sedentary" work, *and* the ALJ found Mutchler to be "closely approaching advanced age," then under the regulations, Mutchler would be found disabled. Mutchler concludes that "[t]he evidence overwhelmingly mandates a finding that [she] is . . . disabled[.]"[13] Accordingly, Mutchler asserts this matter should be remanded for payment of benefits.

In response, the Commissioner argues that the ALJ properly considered and weighed Dr. Kappos' opinions.[14] The Commissioner further argues that the ALJ's RFC

---

[11] In support of her claim, Mutchler refers to Dr. Kappos' opinion limiting her to only occasional walking, and Dr. Shaeffer's opinion limiting her to occasional standing and walking. *See* Administrative Record at 286 (Dr. Shaeffer's opinion); 395 (Dr. Kappos' opinion).

[12] Mutchler also asserts later in her brief, under the hypothetical question portion of her argument, that the ALJ's RFC assessment was flawed because he limited her to superficial contact with co-workers, supervisors, and the public. *See* Mutchler's Brief (docket number 9) at 11-12. While Mutchler's argument regarding her interaction with co-workers, supervisors, and the public involves both issues concerning the hypothetical question, it also involves issues with the ALJ's RFC assessment. Therefore, the Court will address Mutchler's social functioning as it relates to the ALJ's RFC assessment in the "RFC Assessment" section of this report and recommendation.

[13] Mutchler's Brief (docket number 9) at 14.

[14] With regard to the opinions of Dr. Shaeffer, the Commissioner points out that Dr. Shaeffer's opinions were "completed more than nine months before [Mutchler's] alleged onset date, and thus outside the relevant time period." Commissioner's Brief (continued...)

16

assessment for Mutchler was proper, including limiting Mutchler to "light" work, instead of limiting her to only "sedentary" work, and limiting her to superficial contact with coworkers, supervisors, and the public. The Commissioner concludes that the ALJ's decision is supported by substantial evidence and should be affirmed. Additionally, the Commissioner concludes that Mutchler's argument regarding a finding of disability under the regulations is misplaced, and need not have been considered by the ALJ.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship,

---

[14](...continued)
(docket number 10) at 21. The Commissioner further points out that contrary to Mutchler's contention in her brief, the ALJ did not specifically address Dr. Shaeffer's opinions in her decision. Specifically, the Commissioner states "the ALJ did not assign any weight whatsoever to Dr. Shaeffer's opinion[.] . . . Indeed, the ALJ stated that she assigned great weight to opinions from treating or examining physicians and explicitly discussed evidence from Dr. Ismail, Dr. March, Dr. Kappos, and Dr. Eckholm--all from the relevant time period." *Id.* The Commissioner maintains that while Dr. Shaeffer limited Mutchler to occasional standing and walking due to COPD in April 2008, her COPD in 2009, the relevant time period at issue in this case, was under control with medication. *Compare* Administrative Record at 286 (Dr. Shaeffer's opinions) with Administrative Record at 327 (providing COPD under control in May 2009); 349 (providing COPD stable in November 2009); 437 (providing Mutchler's COPD "doing well" in March 2010). The Commissioner concludes that the ALJ "did not err in choosing not to assign any weight to Dr. Shaeffer's opinion statement." Commissioner's Brief (docket number 10) at 22. The Court agrees with the Commissioner's assessment, and finds that the record supports the Commissioner's contention that Dr. Shaeffer's opinions are outside the relevant time period and unsupported by the record during the relevant time period, as Mutchler's COPD was consistently found under control in 2009 and 2010. See Administrative Record at 327; 349; 437. Thus, the Court finds it unnecessary to address Dr. Shaeffer's opinions in its consideration of the ALJ's RFC assessment for Mutchler. *See Guilliams*, 393 F.3d at 803 (providing that an ALJ's RFC assessment is based only on relevant evidence).

(3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. §§ 404.1527(d)). An ALJ is also required to "'explain in the decision the weight given to the opinions of a State agency medical . . . consultant[.]'" *Wilcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008) (quoting 20 C.F.R. § 404.1527(f)(2)(ii)).

An ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Furthermore, an ALJ has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

In her decision, the ALJ thoroughly addressed the opinions of Dr. Kappos:

[Mutchler] underwent a physical consultative examination in June 2010 by George Kappos, M.D. Dr. Kappos found that [Mutchler] had no significant abnormalities of the range of motion, except some contracture deformity of the right index and middle fingers from previous surgeries. [Mutchler] moved about the room with an easy gait, was able to heel and toe walk without difficulties, squat without difficulties, and get on and off the examination table without difficulties. [Mutchler] had no restrictions lifting, pushing, pulling, carrying, sitting, standing, stooping, bending, crawling, kneeling, and being on uneven surfaces, ladders, or stairs. She had no restrictions in her grip, grasp, lower extremities, vision, hearing, communication, travel, or any environmental restrictions. [Mutchler's] only restrictions were that she could do only occasional walking, and she would need to avoid fumes and dust because of her breathing problems. The undersigned therefore finds it is appropriate for [Mutchler] to avoid concentrated exposure to extreme cold, humidity, fumes, gases, poor ventilation, and dust. Further, even though it is more restricted than Dr. Kappos's findings, in an effort to give [Mutchler's] subjective complaints the benefit of the doubt, the undersigned finds it is appropriate that [she] be allowed to frequently climb ramps and stairs, ladders, ropes, and scaffolds. She can frequently balance, stoop, kneel, crouch, and occasionally crawl, and do occasional handling and fingering with her right hand.

(Administrative Record at 19.)

Here, the ALJ thoroughly addressed and considered the opinions of Dr. Kappos. In addition to including Dr. Kappos' limitations for Mutchler in her RFC, the ALJ also added additional limitations to Mutchler's RFC, "in an effort to give [Mutchler's] subjective complaints the benefit of the doubt[.]"[15] The regulations provide that to be considered capable of "light work," a claimant must: (1) have the ability to lift no more than 20 pounds with frequent lifting or carrying objects weighing up to 10 pounds; and

---

[15] Administrative Record at 19.

(2) have those lifting abilities even when it requires a "good deal" of walking or standing.[16] Dr. Kappos opined that Mutchler had no restrictions on lifting and standing.[17] He limited her to occasional walking.[18] Similarly, Dr. Byrnes and Dr. Daly, both non-examining agency doctors, determined that Mutchler could at least occasionally lift 20 pounds, frequently lift 10 pounds, and stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday.[19] Significantly, Mutchler offers no medical evidence during the relevant time period to support her contention that she is unable to perform "light work" and should be limited to only "sedentary work."[20] Accordingly, the Court finds that there is substantial evidence in the record to support the ALJ's RFC assessment that Mutchler is capable of light work. *See Anderson*, 696 F.3d at 793.

Turning to other evidence pertinent to the ALJ's RFC assessment, the ALJ addressed the opinions of Dr. March:

> [Mutchler] underwent a mental consultative examination in May 2010 by Mike March, Ph.D., clinical psychologist. . . . After an examination, Dr. March found [Mutchler] was oriented to all spheres including purpose. He opined that she had some positive orientation toward her future regarding her relationships. While she was anxious and mildly dysphoric, her insight and judgment appeared to be fair, with good thought process and no signs of psychosis. . . . While noting that Dr. March evaluated [Mutchler] only one time, the undersigned accords significant weight to his opinion as it is consistent with the other evidence of record. The undersigned therefore finds it is appropriate to limit [Mutchler] to simple,

---

[16] *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

[17] *See* Administrative Record at 395.

[18] *Id.*

[19] *Id.* at 401 (Dr. Byrnes); 416 (Dr. Daly).

[20] *See* Footnote 14.

routine tasks, with short-lived, superficial contact with coworkers, supervisors, and the public.

(Administrative Record at 19.) In Dr. March's evaluation, he stated Mutchler's "anxiety could lead to occasional difficulties with interpersonal interactions in terms of limited frustration tolerance[,]" but "[s]he denied any history of noteworthy interpersonal problems in the work place whether with supervisors, coworkers, or the public."[21] Accordingly, the Court finds that there is substantial evidence in the record to support the ALJ's RFC assessment that Mutchler is capable of superficial contact with co-workers, supervisors, and the public. *See Anderson*, 696 F.3d at 793.

Moreover, having reviewed the entire record, the Court finds that the ALJ properly considered Mutchler's medical records, observations of treating physicians, and Mutchler's own description of her limitations in making the RFC assessment for Mutchler.[22] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. Because the Court concludes that the ALJ made a proper RFC assessment, the Court finds that Mutchler's argument regarding sedentary work, "closely approaching advanced age," and the regulations is without merit.[23]

---

[21] Administrative Record at 371; *see also id.* at 281 (In 2008, consultative psychological examiners opined that Mutchler "appears capable of interacting appropriately with supervisors, co-workers and the public.").

[22] *See* Administrative Record at 17-21.

[23] Mutchler argues that assuming the ALJ had followed her interpretations of Dr. Kappos' and Dr. Shaeffer's opinions and found her RFC to be for only "sedentary" work, *and* the ALJ found her to be "closely approaching advanced age," then under the regulations, she should have been found disabled. Table No. 1, Rules 201.09 and 201.10

(continued...)

## 2. *Hypothetical Question*

Mutchler argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not contemplate all of her functional limitations, and was based on a faulty RFC assessment. Mutchler concludes that the vocational expert's testimony should be ignored, and this matter should be remanded for payment of benefits.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Mutchler's testimony in assessing Mutchler's RFC.[24] The Court further determines that the ALJ's findings and conclusions

---

[23](...continued)

in 20 C.F.R. Pt. 404, Subpt. P, App. 2, provide that an individual limited to sedentary work, closely approaching advanced age, with unskilled or non-transferable skilled or semi-skilled work experience should be found disabled. *Id.* Rules 201.09 and 201.10 are not applicable in this case because the Court has determined that the ALJ properly assessed Mutchler's RFC as limited to "light" work and not "sedentary" work. Accordingly, the Court finds Mutchler's argument with regard to the issue of sedentary work, "closely approaching advanced age," and the regulations to be without merit.

[24] *See* Administrative Record at 17-21; *see also* the Court's discussion of the ALJ's RFC assessment in section *V.B.1* of this decision.

are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the Court determines that the ALJ's hypothetical question was sufficient.

## *VI. CONCLUSION*

I find that the ALJ fully and fairly developed the record in this matter, made a proper RFC assessment for Mutchler, and provided proper hypothetical questions to the vocational expert. Accordingly, I believe the ALJ's decision is supported by substantial evidence and should be affirmed.

## *VII. RECOMMENDATION*

For the reasons set forth above, I respectfully recommend that the district court **AFFIRM** the final decision of the Commissioner of Social Security and **DISMISS** with prejudice Plaintiff's Complaint (docket number 3) filed on February 20, 2013.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this 7th day of November, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA